UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR L. SMITH, | Case No. 2:20-cv-2441-TLN-JDP (PS) |
| Plaintiff, | |
| v. | ORDER |
| PAUL COUNTS, *et al.*, | |
| Defendants. | |

Plaintiff brings this action against fifteen defendants, alleging claims for violation of federal copyright and state laws. Defendants Scott Bennett, Paul Counts, John Cardot, Matthew Dardenne, and Matthew Quall have filed motions to dismiss the second amended complaint for failure to state a claim. ECF Nos. 83, 95, & 96. Cardot, Dardenne, and Quall have also moved to strike plaintiff's state law claims under California's Strategic Lawsuit Against Public Participation ("anti-SLAPP") provisions set forth in in California Civil Procedure Code section 425.16, ECF No. 87, and Bennett has moved for sanctions, ECF No. 78. For the reasons explained below, Cardot, Dardenne, and Matthew's motion to dismiss is granted, and the remaining motions are denied.

1

**Bennett's Motion for Sanctions**

Bennett argues that sanctions should be imposed against plaintiff due to his failure to comply with the court's July 8, 2024 order. ECF No. 78.

In that order, the court found service of the second amended complaint appropriate because, for purposes of screening under 28 U.S.C. § 1915(e), the complaint stated a claim upon which relief could be granted. ECF No. 74. Plaintiff was ordered to provide the U.S. Marshal, within sixty days, all information needed to effect service of process, including a completed copy of the summons, a USM-285 form, and a copy of the endorsed complaint for each defendant. *Id.* at 3-4. Plaintiff was also ordered to file, within twenty-one days of furnishing the required documents, a declaration stating the date on which plaintiff submitted the required documents to the U.S. Marshal. On October 2, 2024, the court received a declaration from plaintiff, dated September 27, 2024, stating that he had submitted the required service documents on September 9, 2024, to the U.S. Marshal.

Bennett argues that sanctions are appropriate because the court's order required plaintiff to provide the U.S. Marshal with the service documents by September 6, 2024. ECF No. 78.

As a threshold matter, defendant Bennett failed to properly notice his motion for hearing as required by the court's local rules. *See* E.D. Cal. L.R. 230(a) (providing that all motions shall be noticed for hearing on the motion calendar of judge "before whom the motion is to be heard not less than thirty-five (35) days after service and filing of the motion"). That failure alone warrants denial of his motion. E.D. Cal. L.R. 110 (Failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."); E.D. Cal. L.R. 183(a) ("Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law.").

More fundamentally, Bennett has failed to demonstrate that sanctions are appropriate. Because September 6, 2024, was a Saturday, plaintiff had until the following Monday, or September 8, 2024, to provide the required documents. *See* Fed. R. Civ. P. 6(a)(1)(C). And while plaintiff's September 9 submission was untimely, the court does not find that the one-day

2

1  delay warrants imposition of sanctions. This is especially true considering that Bennett does not
2  claim to have been prejudiced by this nominal delay. Accordingly, Bennett's motion for
3  sanctions, ECF No. 78, is denied.

**Motions to Dismiss**

**I.     Background**

In his second amended complaint, plaintiff alleges that he is the owner of a copyright registration for "Unbelievers," a novel that he authored in 2012. ECF No. 72. In 2013, he adapted the novel into a screenplay—which he also registered with the U.S. Copyright Office—and began taking steps to make a motion picture. *Id.* ¶ 34. In May 2014, plaintiff attended a film festival and met defendant Kristen Stryker, who recommended that plaintiff contact her husband, defendant Paul Counts, about assisting with the film project. *Id.* ¶¶ 37-38. Counts subsequently accepted plaintiff's offer to be an executive producer, and in December 2014 Counts flew from his home in Washington to Sacramento to begin filming a teaser for the Unbelievers film. *Id.* ¶ 41.

The following year, plaintiff authorized Counts to form Unbelievers Movie, LLC, a temporary Washington State limited liability company formed for the purpose of complying with the Screen Actors Guild requirements. *Id.* ¶ 43. Plaintiff alleges that at the time it was formed, Counts understood that plaintiff would subsequently form the official entity in California. *Id.* ¶¶ 43-44. Plaintiff authorized Counts to draft the LLC's operating agreement, which plaintiff, Stryker, and Counts—the owners and managers of the LLC—all signed. *Id.* ¶¶ 45-46. That agreement allegedly reflected that no member contributed any money, intellectual property, or other assets to the LLC. *Id.* ¶ 46.

Plaintiff was subsequently introduced to defendant Bennett, and in February 2016 plaintiff entered into investment agreements with both Bennett and Counts. *Id.* ¶¶ 54, 59. Under these agreements, Bennett and Counts agreed to invest in plaintiff's company, Usherance Studios LLC ("Usherance"), in exchange for the right to share in the profits from the company's projects. *Id.* ¶ 59. The agreements included plans to complete other creative projects, but plaintiff emphasizes

3

that the agreements did not convey to Bennett or Counts an ownership interest in "Unbelievers." *Id.* ¶¶ 59-61.

In the ensuing months, plaintiff worked with Counts on various projects. *Id.* ¶¶ 60, 63. Their relationship, however, soured, and in January 2017 Counts and Bennett filed a civil complaint in state court against plaintiff, his wife, and Usherance, which allegedly "contained blatant, knowingly false, and provably false material claims and allegations." *Id.* ¶¶ 64-65. Shortly after that lawsuit was filed, defendants allegedly orchestrated a campaign to undermine him, which included creating a private Facebook group for Unbelievers cast and crew where they allegedly posted false statements about plaintiff. *Id.* ¶¶ 67-69. For example, plaintiff alleges that Counts and Bennett posted to the Facebook group "blatant and provably false claims against [p]laintiff" and "published their unverified LAWSUIT online." *Id.* ¶ 68. According to plaintiff, this online activity resulted in several actors and locations withholding or revoking permission to use their likenesses, ultimately leading to the "termination" of the Unbelievers film. *Id.* ¶ 69. Plaintiff further alleges that while the state lawsuit was pending, defendants, with the knowledge and support of their attorneys—defendants Quall, Dardenne, and Cardot—began editing a version of the Unbelievers film using plaintiff's copyrighted work and without his knowledge or approval. *Id.* ¶ 150. Defendants also allegedly publicized their intent to finish and distribute the film, with planned release dates, in part via social media and updates to IMDB.

In June 2019, after two years of litigation, Counts and Bennett voluntarily dismissed the state court action "without any form of settlement, condition, or agreement with Plaintiff." *Id.* ¶ 150. However, a few weeks later, defendants publicly broadcast a portion of the edited film, *id.* ¶¶ 90-91, which led to plaintiff, on October 11, 2019, to file suit in this district against Counts, Bennett, and others. *Id.* ¶ 76; *see Smith v. Counts*, No. 2:19-cv-2038-KJM-DB. Believing that his, Counts', and Bennett's shared religious beliefs would allow the parties to reach an informal resolution, plaintiff voluntarily dismissed that suit. ECF No. ¶ 76. Within weeks, plaintiff learned that Counts and Bennett had set a release date for Unbelievers, *id.* ¶ 77, leading him to file the instant action.

4

The second amended complaint alleges eleven claims styled as: (1) copyright infringement; (2) contributory copyright infringement; (3) fraud and intentional misrepresentation; (4) aiding and abetting fraud; (5) breach of fiduciary duty; (6) malicious prosecution; (7) abuse of process; (8) intentional and negligent infliction of emotional distress; (9) declaratory relief; (10) injunctive relief; and (11) accounting. *Id.* at 18-61.

Defendants Quall, Dardenne, and Cardot move to dismiss each of the claims brought against them, primarily arguing that the second amended complaint's limited allegations against them fail to state a claim for relief.[1] ECF No. 83. Defendants Counts and Bennet have also filed their own motions to dismiss. ECF Nos. 95 & 96.

## II. Legal Standard

Pursuant to 28 U.S.C. § 1915(e)(2), the court must dismiss the case at any time if it determines the allegation of poverty is untrue, or if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. Under Rule 12, a complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light

---

[1] Plaintiff's claims for aiding and abetting (fourth cause of action) and malicious prosecution are brought only against Quall, Dardenne, and Cardot, while his breach of fiduciary duty claim (fifth cause of action) is brought only against Counts. Plaintiff's remaining claims are directed at all defendants. ECF No. 72 at 18-61.

5

most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

**III.   Analysis**

  **A.   Defendants Counts and Bennett's Motions to Dismiss**

Defendants Counts and Bennett filed letters in which they argue that the claim against all defendants should be dismissed. To the extent that Counts and Bennett intended these letters to serve as motions to dismiss under Rule 12(b)(6), the motions are denied.

As an initial matter, neither motion was noticed for hearing as required by Local Rule 230(a). More importantly, both filings primarily address the viability of plaintiff's claims against other defendants. For instance, Counts and Bennett appear to argue that five of the individual defendants—Charles Lago, Ryan Hudson, Franco Zampetti, KK Chan, and Richard Mortimer—should be dismissed for failure to timely effect service of process and that three of the business entity defendants—Unbelievers Movie, LLC; Smiling Llama Productions, LLC; and Count of Us, LLC—have no relation to the dispute alleged in plaintiff's complaint. Counts and Bennett, who are both proceeding without counsel, are not permitted to represent other defendants' legal interests. *See Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself") (internal quotations and citation omitted).[2]

---

[2] Counts and Bennett appear to argue that plaintiff's copyright infringement claims are barred by the applicable statute of limitation. ECF No. 95 at 6-7; ECF No. 96 at 6-7. Although Counts and Bennett are permitted to challenge the copyright infringement claims alleged against them, their timeliness argument is not based on the second amended complaint's allegations. Instead, it is based on their contention that filming for Unbelievers concluded in November 2015. However, plaintiff's copyright infringement claims are not based on the actual filming of the movie. Instead, his claims are based on defendants' attempted use of footage without his authorization. Accordingly, even had Counts and Bennett properly noticed their motion for hearing, they would not have not shown that any of plaintiff's claims are subject to dismissal.

**B.     Defendants Quall, Dardenne, and Cardot Motion to Dismiss**

      **i.     Copyright Infringement**

Plaintiff alleges that all defendants are liable for copyright infringement because they edited, sold, broadcast a portion of, and attempted to sell, the Unbelievers film without his permission. ECF No. 72 at 5, 18-19.

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991); *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc). The second element includes "two distinct components: 'copying' and 'unlawful appropriation.'" *Woodland v. Hill*, 136 F.4th 1199, 1206 (9th Cir. 2025). The first component is straightforward: plaintiff must allege that defendants copied the work at issue. *Id.* Once that is shown, plaintiff must then provide "unlawful appropriation." *Id*. A copyright does not protect ideas and concepts in the plaintiff's work; instead, its protection "extends only to the plaintiff's 'particular expression' of" those ideas." *Id.* (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 (9th Cir. 1977)). Thus, "[t]o show unlawful appropriation, the plaintiff must prove that the defendant copied enough of the protected expression in the work 'to render the two works substantially similar.'" *Id.* (quoting *Rentmeester v. Nike*, 883 F.3d 1111, 1117 (9th Cir. 2018).

Plaintiff alleges that he is the registered copyright owner of the Unbelievers novel and screenplay, which have both been registered with the U.S. Copyright Office. ECF No. 72 ¶ 85. He also alleges that he is the sole copyright claimant of the "Unbelievers motion picture," which has been pre-registered with the U.S. Copyright Office. *Id.* ¶ 86. Plaintiff further alleges that he has not "licensed, sold, granted, traded, or transferred his various Unbelievers copyrights or controlling rights to Defendants," *id*., which include the "exclusive right to produce and prepare derivatives of his copyrighted works and to exclusively display his copyrighted works publicly," *id*. *See* 17 U.S.C. § 106. Plaintiff has sufficiently alleged ownership in the film that was allegedly infringed.

Plaintiff's allegations, however, are insufficient to show that defendants Quall, Dardenne,

and Cardot copied plaintiff's protected works. Plaintiff does allege that defendants, including Quall, Dardenne, and Cardot, "knowing violated [plaintiff's] rights and edited completed, shared and displayed an awful edit of [unbelievers], with their ATTORNEYS knowledge."[3] *Id.* ¶ 104. He also vaguely alleges that "defendants" infringed copyrights to his novel, screenplay, and film by editing and selling an ownership interest in the film. ECF No. 72 ¶¶ 93. These statements, which amount to little more than an unsupported conclusion that all defendants infringed plaintiff's rights, are insufficient to put defendants Quall, Dardenne, and Cardot on notice of the factual basis of plaintiff's copyright claims against them. *See Yoakam v. Warner Music Grp. Corp.*, No. 2:21-cv-01165, 2021 WL 3774225, at *10 (C.D. Cal. July 12, 2021) ("Because '[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful . . . [a] complaint based on a theory of collective responsibility must be dismissed.'") (quoting *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013); *Karkanen v. California*, No. 17-cv-06967, 2018 WL 3820916, at *7 (N.D. Cal. Aug. 10, 2018) ("Courts consistently conclude that a complaint which 'lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'").

Critically, plaintiff provides no specific facts suggesting that defendants Quall, Dardenne, and Cardot were involved in producing, editing, or attempting to distribute the film. Instead, the complaint's factual allegations pertaining to plaintiff's copyright infringement claims focus primarily on defendants Counts and Bennett's actions. *See id.* ¶ 88 (alleging that in late 2018, Counts and Bennett publicly announced that they were editing and trying to sell the film); ¶ 104 (alleging that in December 2018, Counts and Bennett posted on the Unbelievers Facebook Group that film editing was near completion and that they anticipated being ready to discuss selling the film to distributors in mid-January 2019). Accordingly, plaintiff has failed to state a copyright infringement claim against defendants Quall, Dardenne, and Cardot.

### ii. Contributory Infringement

Plaintiff's allegations are also insufficient to support a contributory infringement claim

---

[3] The second amended complaint collectively refers to defendants Quall, Dardenne, and Cardot as "ATTORNEYS."

against defendants Quall, Dardenne, and Cardot.

"[W]hile the Copyright Act does not expressly impose liability on anyone other than direct copyright infringers, courts have long recognized that in certain circumstances, vicarious or contributory liability will be imposed." *In re Napster, Inc. Copyright Litigation*, 377 F. Supp. 2d 796, 801 (N.D. Cal. May 31, 2005) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261 (9th Cir. 1996)). "Traditionally, one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1019-22 (9th Cir. 2001). "To be liable for contributory copyright infringement, the defendant must have knowledge or reason to have knowledge of direct infringement and must provide material assistance to the infringer." *Id.* To state a contributory infringement claim, a plaintiff must allege: "(1) direct infringement by a third party; (2) actual or constructive knowledge by the defendant that third parties were directly infringing; and (3) a material contribution by the defendant to the infringing activities." *In re Napster*, 377 F. Supp. 2d at 801 (citing *A&M Records, Inc.*, 239 F.3d at 1013 n.2, 1019-22).

The second amended complaint includes allegations suggesting that defendants Quall, Dardenne, and Cardot were aware that defendants Bennett and Counts were infringing plaintiff's copyrights. For example, plaintiff alleges that in Bennett and Counts' Facebook post about being ready to discuss finding a distributor for the purchase of the film, they stated, "We are thrilled to be making this post with our attorneys [sic] permission and support!" ECF No. No. 72 ¶ 104. Even assuming plaintiff's allegations are sufficient and that defendants Quall, Dardenne, and Cardot had knowledge of Bennett and Counts' direct infringement of plaintiff's copyrights, plaintiff's allegations fall short of establishing the third element of his contributory infringement claim. Specifically, plaintiff provides no factual allegations demonstrating how Quall, Dardenne, and Cardot materially contributed to the infringement. Instead, plaintiff provides only his vague and conclusory statements that all defendants contributed to the infringement of his copyrights. *See, e.g.*, ¶ 105 (alleging that defendants "induced, caused and materially contributed to the infringing acts of others by encouraging and inducing others to edit, produce, share, and distribute

9

unauthorized UNBELIEVERS content derived from Plaintiff's registered copyrighted Unbelievers works.").

### iii. Fraudulent Misrepresentation and Aiding and Abetting Fraud

Plaintiff's third and four causes of action are styled as "Fraud and Intentional Misrepresentation" and "Aiding and Abetting Fraud," respectively.[4] ECF No. 72 at 21-46.

To state a claim for fraud, a plaintiff must plead "(a) misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003); *see also* Cal. Civ. Code §§ 1709-10. Federal Rule of Civil Procedure 9(b) requires fraud claims to be pled with particularity. A plaintiff's allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). The complaint must include "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quotation marks omitted) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). Lastly, a plaintiff must explain what is false or misleading about the defendant's statements and why those statements are false. *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

Plaintiff's complaint presents a laundry list of allegedly false statements by defendants. With respect to defendants Quall, Dardenne, and Cardot, plaintiff alleges that they "intentionally and maliciously communicated constant false and misleading statements against plaintiff through group emails, public Facebook posts, and through the UNBELIEVERS FACEBOOK GROUP, in their relentless and fraudulent effort to force plaintiff into giving up his legal rights to his FILM."

---

[4] Plaintiff's "Fraud and Intentional Misrepresentation" claim is asserted against all defendants, while his aiding and abetting fraud claim is brought against defendants Quall, Dardenne, and Cardot.

10

ECF No. 72 ¶ 130. These defendants also allegedly filed a document in state court that falsely represented that Counts was the sole owner of an LLC that was actually jointly managed by plaintiff. *Id.* ¶ 142. Plaintiff further claims that Quall, Dardenne, and Cardot falsely represented that their clients, defendants Counts and Bennett, "would not violate Plaintiff's rights to his" film. *Id.* ¶ 150. Lastly, he alleges that he justifiably relied on these misrepresentation—as well numerous other false statements made by other defendants—which were made in an effort to defraud plaintiff of his rights to his film.

Plaintiff's complaint identified the statements that that were allegedly false or misleading. Plaintiff, however, provides only his unsupported conclusion that defendants' statements were made with the intent to defraud and that he justifiably relied on these statements. Such conclusory allegations do not satisfy Rule 9's heightened pleading requirements. Accordingly, plaintiff's third and four causes of action are dismissed with leave to amend.

### iv. Malicious Prosecution

Plaintiff also alleges a malicious prosecution claim against Quall, Dardenne, and Cardot based on the lawsuit they filed in January 2017 on behalf of Counts and Bennett. ECF No. 72 at 12, 48-51. Cardot, Quall, and Dardenne argue that this claim should be dismissed as untimely. ECF No. 83-1 at 22-23

Under California law, to allege malicious prosecution, a plaintiff must allege that a "prior proceeding, commenced by or at the direction of the malicious prosecution defendant was, (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (1992). "[A] resolution of the underlying litigation that leaves some doubt as to the defendant's innocence or liability is not a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff. Thus, a dismissal resulting from negotiation, settlement or agreement is generally not deemed a favorable termination of the proceedings." *Id.* Additionally, in California, the statute of limitations for malicious prosecution claims is two years. *See* Cal. Civ. Proc. Code § 335.1; *see also Scannell v. Cnty. of Riverside*, 152 Cal. App. 3d 596 (1984) (holding that malicious prosecution is subject to § 335.1). "[A] party's voluntary dismissal is

11

considered a favorable termination for the opposing party unless there is a reason for the dismissal not having to do with the merits of the action." *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1048 (E.D. Cal. 2008) (citing *MacDonald v. Joslyn*, 275 Cal. App. 2d 282, 289 (1969).

Relying on *Vafi v. McCloskey*, 193 Cal. App. 4th 874, 880 (2011), Cardot, Quall, and Dardenne contend that malicious prosecution claims alleged against attorneys are subject to a one-year statute of limitations. ECF No. 93-1 at 22. They note that plaintiff specifically alleges that the state-court suit was voluntarily dismissed on June 10, 2019, *see* ECF No. 72 ¶ 68, but plaintiff did not initiate this action until December 2020. Accordingly, they argue that plaintiff's malicious prosecution claim is barred by the statute of limitations. ECF No. 83-1 at 22.

After Cardot, Quall, and Dardenne filed their motion to dismiss, the California Supreme Court held, as a matter of first impression, that the one-year statute of limitations period in California Code of Civil Procedure § 340.6 "does not apply to claims against attorneys brought by parties who were never their clients or the intended beneficiaries of their clients." *Escamilla v. Vannucci*, 17 Cal. 5th 571, 575 (2025). Instead, for malicious prosecution claims brought by a formerly adverse party, like the instant case, the general two-year limitation period for tort claims applies. *Id.* at 590. Accordingly, defendants have failed to show that plaintiff's malicious prosecution claim is untimely.

Nevertheless, I find that plaintiff's allegations fail to state a claim for malicious prosecution, and therefore the claim should be dismissed under 28 U.S.C. § 1915(e)(2). Plaintiff's malicious prosecution claim is based largely on conclusory allegations. For example, plaintiff alleges that "Defendants' LAWSUIT was filed with absence of reasonable or probable cause, because the facts and evidence in their possession or easily obtainable, did not support any of the false claims in" the lawsuit. ECF 72 ¶ 188. He further alleges that the suit "was filed with malicious and . . . fraudulent intent . . . to give Defendants the opportunity to unlawful[ly] edit [the Unbelievers film] and force Plaintiff into giving up all his rights to the" film. *Id.* He does not, however, provide any details about the state court action or include factual allegations that support his conclusion that defendants filed the suit with malice and without probable cause. The

12

1    absence of any context renders plaintiff's malicious prosecution claim non-compliant with Rule 8,
2    which demands more than unadorned conclusions. *Iqbal*, 556 U.S. at 678 ("The pleading
3    standard Rule 8 announces does not require detailed factual allegations, but it demands more than
4    an unadorned, the-defendant-unlawfully-harmed-me accusation.").

        **v.**        **Abuse of Process**

6    Plaintiff alleges an abuse-of-process claim against Cardot, Quall, and Dardenne based on
7    their actions in prosecuting the state-court lawsuit. ECF No. 72 at 51-55. Specifically, he alleges
8    that Cardot, Quall, and Dardenne made several false statements to the state court, including that
9    Counts was the sole manager of Unbelievers Movie, LLC, and that the lawsuit was not filed in an
10   effort to deprive plaintiff of his rights to the film. *Id*.

11   Cardot, Quall, and Dardenne argue that plaintiff's abuse of process claim fails because it
12   is based on making statements during the course of ligation, which are protected by the litigation
13   privilege. ECF No. 83-1 at 23.

14   "The common law tort of abuse of process arises when one uses the court's process for a
15   purpose other than that for which the process was designed." *Rusheen v. Cohen*, 37 Cal. 4th
16   1048, 1057 (2006). "To succeed in an action for abuse of process, a litigant must establish that
17   the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a
18   willful act in the use of the process not proper in the regular conduct of the proceedings." *Id.*
19   California's litigation privilege "applies to any communication (1) made in judicial or quasi-
20   judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the
21   objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.*
22   "The principal purpose of [the privilege] is to afford litigants and witnesses the utmost freedom of
23   access to the courts without fear of being harassed subsequently by derivative tort actions."
24   *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990) (citation omitted). Generally, "the privilege
25   applies to applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by
26   litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and
27   (4) that have some connection or logical relation to the action." *Id.*; *see Rubin v. Green*, 4 Cal.
28   4th 1187, 1193 (1993) ("For well over a century, communications with 'some relation' to judicial

proceedings have been absolutely immune from tort liability by the [litigation privilege].").

Cardot, Quall, and Dardenne's acts of filing and maintaining the state suit against plaintiff are not sufficient to support an abuse-of-process claim. *See Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1169 (1986) ("[W]hile a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action."). Moreover, Cardot, Quall, and Dardenne's allegedly false statements, which were all made in relation to a judicial proceeding, cannot form a basis of liability based on a theory of abuse of process. *See Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1242 (2007) (observing that the litigation privilege has "been held to immunize defendants from tort liability based on [a] theor[y] of abuse of process . . . ."). Accordingly, plaintiff's abuse-of-process claim against defendants Cardot, Quall, and Dardenne is dismissed with leave to amend.

   **vi.**  **Intentional and Negligent Infliction of Emotional Distress**

Cardot, Quall, and Dardenne argue that plaintiff's intentional and negligent infliction of emotional distress claims should be dismissed because both rely solely on vague and conclusory allegations asserted generally against all defendants. ECF No. 83-1 at 24.

"A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1378 (2010); *see Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124 (1993). Where the plaintiff does not allege personal, physical injury accompanying the emotional distress, she must allege that the distress was "serious." *Wong*, 189 Cal. App. 4th at 1378. Serious distress is mental distress that a reasonable, normally constituted person would be unable to adequately cope with. *Id*.

"[T]o state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional

14

distress by the defendant's outrageous conduct." *Voss v. Baker*, No. 1:17-CV-00626-DAD-EPG-PC, 2017 WL 6406044, at *6 (E.D. Cal. Dec. 15, 2017), *report and recommendation adopted*, No. 1:17-CV-00626-DAD-EPG-PC, 2018 WL 489292 (E.D. Cal. Jan. 19, 2018) (quoting *Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, at *14 (2017), *as modified*, (Apr. 18, 2017). It is not enough that a defendant act with an intent to inflict emotional distress or even that he act in a way that would entitle plaintiff to damages. *Id*. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (quoting *Jackson v. Mayweather*, 10 Cal. App. 5th 1240 (2017), as modified (Apr. 19, 2017)).

In support of his intentional and negligent infliction of emotional distress claims, plaintiff makes only conclusory allegations. For instance, he alleges that "Defendants presented their horrendously false case to the UNBELIEVERS cast and crew and the public, for years making horrific false claims and allegations against Plaintiff and subjecting Plaintiff and his family to years of fear, terror, and incalculable loss . . . ." ECF No. 72 ¶ 206. He further alleges that "Defendants' outrageous conduct resulted in severe emotional distress to Plaintiff, and the devaluation of Plaintiff's life." As previously discussed, such general allegations fail to comport with Rule 8's pleading requirements. *See Karkanen*, 2018 WL 3820916, at *7 ("Courts consistently conclude that a complaint which 'lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'").

   **vii. Declaratory and Injunctive relief**

Plaintiff's ninth and tenth causes of actions are styled as claims for declaratory and injunctive relief, respectively. ECF No. 72 at 57-60. With respect to his claim for declaratory relief, plaintiff alleges that there is a controversy over whether he or Counts is the owner of the Unbelievers film. *Id*. ¶¶ 214-21. In his tenth cause of action, plaintiff asks that defendants be enjoined "from sharing, displaying and distributing the FILM." *Id.* ¶ 235.

Declaratory and injunctive relief are types of remedies, not independent causes of actions. *See, e.g.*, *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010)

1  ("declaratory and injunctive relief are not causes of action; rather, they are remedies"); *Sherman*
2  *v. Wells Fargo Bank, N.A.*, No. CIV S-11-0054-KJM-EFB, 2011 WL 1833090, at *2 (E.D. Cal.
3  May 12, 2011) ("The third and fourth claims are for injunctive and declaratory relief, which are
4  not causes of action but rather must be based on other, viable causes of action."). Although these
5  forms of relief might be available to plaintiff should he succeed on his substantive claims,
6  declaratory and injunctive relief are not standalone causes of action. Accordingly, without
7  deciding whether such forms of relief will be available should plaintiff succeed on any of his
8  claims, I find that plaintiff cannot maintain standalone claims for declaratory and injunctive relief.
9  *See Bailey Venture Partners XVI, LLC v. Myall*, No. 22-cv-05874-SK, 2013 WL 1420429, at *2
10 (N.D. Cal. Jan. 17, 2023) ("[T]he Court concludes that declaratory relief is not a standalone cause
11 of action."); *Smith v. U.S. Bank Nat'l Ass'n*, CV 12-2743-WF(VBKx); 2012 WL 12887913, *2
12 (C.D. Cal. 2012) (dismissing separate claim for injunctive relief because injunctive relief "is a
13 judicial remedy, not a cause of action").

14  Accordingly, plaintiff's ninth and tenth causes of action will also be dismissed with leave
15 to amend.

### viii. Accounting

17  Plaintiff's final claim seeks an accounting from all defendants. He alleges that defendant
18 Counts deposited money in Unbelievers Movie, LLC's bank account that he received from
19 investors. ECF No. 72 ¶ 239. He claims that, since defendants did not have an ownership interest
20 in the film, he is entitled to an accounting of Unbelievers Movie, LLC, Counts, and Bennett's
21 "financial matters." *Id.* ¶¶ 241-43.

22  Under California law, an accounting is generally an equitable remedy. *Batt v. City &*
23 *County of San Francisco*, 155 Cal. App. 4th 65, 82 (2007). An accounting may be sought to
24 compel a defendant to account to a plaintiff for money where (1) a fiduciary duty exists; or
25 (2) where no fiduciary duty exists, "the accounts are so complicated that an ordinary legal action
26 demanding a fixed sum is impracticable." *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1,
27 14 (1977) ("A suit for an accounting will not lie where it appears from the complaint that none is
28 necessary or that there is an adequate remedy at law.") (quoting *St. James Church v. Super. Ct.*,

135 Cal. App. 2d 352, 359 (1955)); *see also* 5 Witkin, Cal. Procedure, Pleading § 819, p. 236 (4th ed. 1997).

Although plaintiff brings this claim against all defendants, his allegations are limited to funds that Counts deposited in an account held by Unbelievers Movie, LLC. There are no allegations that could support an accounting of Cardot, Quall, and Dardenne's financial records. This is also true of the non-moving defendants, with the exception of defendant Unbelievers Movie, LLC. Accordingly, this claim is subject to dismissal.

Accordingly, it is hereby ORDERED that:

1. Defendant Bennett's motion for sanctions, ECF No. 78, is DENIED.

2. Defendants Cardot, Dardenne, and Quall's motion to dismiss, ECF No. 83, is GRANTED.

3. All claims against defendants Cardot, Dardenne, and Quall are dismissed with leave to amend.

4. Defendants Cardot, Dardenne, and Quall's motion to strike under California's anti-SLAPP statute, ECF No. 87, is DENIED as moot.

5. Defendants Counts and Bennet's motions to dismiss, ECF Nos. 95 & 96, are DENIED without prejudice.

6. Plaintiff is granted twenty-eight days from the date of this order to file a third amended complaint. Failure to do so will result in a recommendation that this action be dismissed.

IT IS SO ORDERED.

Dated: September 15, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

17